[Cite as *In re X.J.*, 2026-Ohio-2527.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF: X.J.

:
:   C.A. No. 2026-CA-24
:
:   Trial Court Case No. 20240772
:
:   (Appeal from Common Pleas Court-
:   Juvenile Division)
:
:   **FINAL JUDGMENT ENTRY &**
:   **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 2, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

KELLY M. SCHROEDER, Attorney for Appellant
JOHN M. LINTZ, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Father appeals from the judgment of the Juvenile Section of the Clark County Common Pleas Court terminating his parental rights and granting appellee, the Clark County Department of Job and Family Services ("JFS"), permanent custody of his child, X.J. In support of his appeal, Father claims that the trial court abused its discretion by failing to grant his counsel's request to continue the evidentiary hearing on the permanent custody matter. For the reasons outlined below, we find no abuse of discretion and affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On January 7, 2025, the trial court adjudicated X.J. a dependent, neglected, and abused child. On February 4, 2025, the trial court placed X.J. in the temporary custody of JFS. Thereafter, JFS filed a motion for permanent custody of X.J. on October 29, 2025.[1] The following day, the trial court appointed counsel to represent Father. On February 17, 2026, the trial court held an evidentiary hearing on the permanent custody matter.

{¶ 3} Neither Father nor X.J.'s mother ("Mother") appeared at the evidentiary hearing. Father's counsel, however, appeared on Father's behalf and made an oral motion to continue the hearing. Father's counsel advised that he was requesting a continuance because he had not had any contact with Father and because he wanted to verify that Father

---

1. The trial court's judgment entry granting permanent custody to JFS incorrectly cites the motion's filing date as January 6, 2026.

had been personally served with notice of the proceedings. The trial court denied counsel's request for a continuance. The court found that the return of service from the sheriff's department indicated that Father had been personally served on November 12, 2025, which gave Father "a significant period of time to reach out to [his counsel]." Hearing Tr. 4.

{¶ 4} After denying the requested continuance, the trial court heard testimony from the JFS caseworker assigned to X.J.'s case. The caseworker testified that Mother and X.J. tested positive for cocaine and fentanyl when X.J. was born. As a result, X.J. was immediately removed from Mother's care. According to the caseworker, Mother has had no contact with X.J. since being in the hospital and has not engaged in the case plan prepared by JFS.

{¶ 5} The caseworker also testified that Mother had reported to the hospital that the biological father of X.J. was either Father or Father's eldest son. In April 2025, a paternity test confirmed that Father was the biological father of X.J., so JFS added Father to its case plan. The caseworker indicated that Father took a drug and alcohol assessment at the treatment provider McKinley Hall and was diagnosed with cocaine dependency. As a result, McKinley Hall recommended that Father complete an intensive outpatient treatment program, which took place three days a week. Father entered the program but had attendance issues. Father also failed to partake in all the drug screens required by the program, and the drug screens that Father did complete came back positive for cocaine. In addition, the caseworker testified that Father has never seen or visited X.J.

{¶ 6} On cross-examination, the caseworker testified that Father, Father's eldest son, and X.J.'s paternal grandfather all have the same first name. The caseworker also testified that Father's employment, providing tree services, required him to travel out of state. The caseworker explained that Father was out of state when he first contacted Father in

3

July 2025, but Father returned for a meeting with him on September 2, 2025. The caseworker testified that he had about five face-to-face meetings with Father, which included the September 2 meeting, a meeting at court in October 2025, two meetings at Father's home in November 2025, and one meeting in January 2026. The caseworker testified that he had tried calling and texting Father since their last meeting, but Father never responded.

{¶ 7} After considering the testimony presented at the evidentiary hearing and the guardian ad litem's report, which recommended permanent custody in favor of JFS, the trial court found that it was in X.J.'s best interest to be placed in the permanent custody of JFS. Accordingly, the trial court granted JFS's motion for permanent custody and terminated Mother's and Father's parental rights. Father now appeals from that judgment and raises a single assignment of error for review.

**Assignment of Error**

{¶ 8} Under his assignment of error, Father claims that the trial court abused its discretion by denying his counsel's request for a continuance of the evidentiary hearing on JFS's motion for permanent custody. We disagree.

{¶ 9} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "This discretion applies in the context of permanent custody hearings." *In re J.H.*, 2026-Ohio-4, ¶ 19 (2d Dist.), citing *In re L.C.*, 2016-Ohio-8188, ¶ 29 (2d Dist.) and *In re K.S.*, 2024-Ohio-3312, ¶ 65 (8th Dist.). "Therefore, an appellate court will not reverse the denial of a continuance in a permanent custody case unless the juvenile court abused its discretion." *Id.*, citing *L.C.* at ¶ 29 and *Matter of B.D.*, 2022-Ohio-2555, ¶ 19 (5th Dist.).

{¶ 10} "'A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.'" *Amesse v. Wright State Physicians, Inc.*, 2018-

4

Ohio-416, ¶ 22 (2d Dist.), quoting *State v. Williams*, 2016-Ohio-322, ¶ 17 (2d Dist.), citing *State v. Renner*, 2013-Ohio-5463, ¶ 24 (2d Dist.). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "A decision is arbitrary if it is made '"without consideration of or regard for facts [or] circumstances."'" (Bracketed text in original) *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* (10th Ed. 2014). "A decision is unconscionable if it 'affronts the sense of justice, decency, or reasonableness.'" *State v. Harris*, 2023-Ohio-3994, ¶ 72 (10th Dist.), quoting *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 7 (10th Dist.). "Abuse of discretion will not be found where the reviewing court simply could maintain a different opinion were it deciding the issue de novo." (Emphasis deleted.) *Williams v. Nored*, 2005-Ohio-605, ¶ 16 (2d Dist.).

**{¶ 11}** "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *State v. Lawson*, 2020-Ohio-6852, ¶ 26 (2d Dist.), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

**{¶ 12}** The balancing test set forth in *Unger*, 67 Ohio St.2d 65, applies to a trial court's denial of a continuance where a parent fails to appear for a permanent custody hearing. *J.H.*, 2026-Ohio-4, at ¶ 20 (2d Dist.); *In re P.M.A.*, 2024-Ohio-1611, ¶ 16 (2d Dist.). Under that balancing test, "[c]ourts should consider (1) the length of the delay requested; (2) whether other continuances have been requested or received; (3) the inconvenience to the litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the

5

movant contributed to the circumstances that gave rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case." *J.H.* at ¶ 20, citing *Unger* at 67-68. The Supreme Court of Ohio has recognized that information will not always be available about each factor and that a trial court is not required to assign a particular weight to any one factor. *Musto v. Lorain Cty. Bd. of Revision*, 2016-Ohio-8058, ¶ 23.

{¶ 13} In this case, Father's counsel did not indicate what length of delay he was requesting when he moved for the continuance, and no other continuances had been requested or received. Counsel requested the continuance because he had not had any contact with Father and because he wanted to verify that Father had been served with notice of the proceedings. We find it significant that this was not a situation where counsel had been appointed to represent Father shortly before the evidentiary hearing or a situation where there was no evidence of service on Father. The record establishes that the trial court had appointed counsel to represent Father on October 30, 2025, and that Father had been personally served with notice of the permanent custody proceedings on November 12, 2025. Thus, over three months before the evidentiary hearing, Father was represented by counsel and was personally served notice of the hearing. There was a significant period of time for counsel to reach out to Father and for Father to respond. It is logical to assume that if Father had been serious about maintaining his parental rights, he would have contacted his counsel. Accordingly, we find that Father's own failure to contact his counsel contributed to the alleged need for a continuance.

{¶ 14} Regarding inconvenience, we note that Father's counsel could have filed a written motion for a continuance before the hearing date as opposed to orally requesting a continuance at the last minute. "Typically, a party must request a continuance in writing before the date of the hearing, though one may be granted if the requesting party shows

6

good cause." *In re J.S.*, 2021-Ohio-78, ¶ 20 (2d Dist.), citing Sup.R. 41(A). In this case, granting a continuance on the day of the evidentiary hearing would have required the matter to be rescheduled and thus would have inconvenienced the trial court and the attendees of the hearing, which included opposing counsel, the guardian ad litem, and the JFS caseworker. Moreover, it was uncertain whether Father's counsel would even have been able to contact Father given Father's hitherto unsuccessful track record. Therefore, it was likely the attendees would have ended up in the exact same position had the hearing been continued.

{¶ 15} The record also indicates that the requested continuance was for an illegitimate reason—to verify whether Father had been served with notice of the proceedings. This reason is illegitimate because the trial court found that the return of service issued by the sheriff's department indicated that Father had been personally served on November 12, 2025. Although Father does not challenge the return of service, he claims that because he often works out of state and shares the same first name with his father and eldest son, there was a genuine concern as to whether the wrong person was served while he was out of town. Father's counsel, however, did not bring that concern to the trial court's attention when he requested the continuance. Indeed, Father's counsel provided absolutely no reason for the trial court to doubt that Father had been personally served on November 12, 2025. In any event, after the trial court denied the continuance, the JFS caseworker specifically testified to seeing Father at his home twice in November 2025, which indicates that Father was in town around the time personal service was made.

{¶ 16} Because the need for a continuance was brought on by Father's own failure to contact his counsel over an extended period of time, because the grant of a last-minute continuance would have inconvenienced the trial court and the parties who appeared at the

hearing, and because the requested continuance was made for an illegitimate reason, we cannot say that the trial court's decision denying the continuance was unreasonable, arbitrary, or unconscionable. Rather, it was a practical decision that prevented the unnecessary delay of the permanent custody decision. Accordingly, the trial court's decision denying the continuance was not an abuse of discretion.

{¶ 17} Father's assignment of error is overruled.

## Conclusion

{¶ 18} Having overruled Father's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.